**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
               *Plaintiff-Appellee,*

     v.

PARIS CHERER,
               *Defendant-Appellant.*

No. 06-10642

D.C. No.
CR-05-00325-JCM

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Submitted November 5, 2007*
San Francisco, California

Filed January 25, 2008

Before: John T. Noonan and M. Margaret McKeown,
Circuit Judges, and David G. Trager,** District Judge.

Opinion by Judge Trager;
Partial Concurrence and Partial Dissent by Judge Noonan

---

  *The panel unanimously find this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

  **Honorable David G. Trager, District Court Judge, Eastern District of New York, sitting by designation.

1241

**COUNSEL**

Mario D. Valencia, Henderson, Nevada, for the appellant.

Steven W. Myhre, Acting United States Attorney, Robert L. Ellman, Appellate Chief, and Nancy J. Koppe, Assistant United States Attorney, Las Vegas, Nevada, for the appellee.

**OPINION**

TRAGER, District Judge:

Paris Cherer was convicted under 18 U.S.C. § 2422(b) for attempting to persuade, entice, or coerce a minor to engage in sexual acts with him. He appeals his conviction on two grounds. First, that the district court committed prejudicial error by improperly instructing the jury, and second, that the district court improperly admitted evidence of his past conviction and other prior bad acts under Federal Rule of Evidence 404(b). He also appeals his sentence of 293 months on the grounds that it is unreasonably long. This court has jurisdiction pursuant to 18 U.S.C. § 3231 and 28 U.S.C. § 1291. Cherer's sentence is appealable under 18 U.S.C. § 3742(a). We affirm the conviction and sentence.

**Background**

On July 8, 2005, FBI Special Agent Sue Flaherty was in an America Online chat room in an undercover capacity, using the AOL screen name "SusieBabyGirl." And Cherer, using the screen name "G8rwith8nGV," initiated a chat with her.

In the following weeks leading up to Cherer's arrest, Cherer, as "G8rwith8nGV," and Agent Flaherty, as "Susie-BabyGirl," chatted online several times. During each chat they discussed sex, e.g., "Susie's" sexual experience, and whether she would be willing to have a sexual relationship with Cherer.

During three different chats, Cherer asked "Susie" her age, and she replied fourteen each time. In particular, the first time "Susie" told Cherer she was fourteen, Cherer replied, "cool, fourteen is cool . . . ." At the time, Cherer was thirty-five.

The two also planned to meet in person. According to their online chats, the purpose of this meeting was for "Susie" to perform various sex acts on Cherer. When Cherer approached the designated meeting place, FBI agents arrested him.

Following his arrest, Cherer made several statements to the FBI, including that he thought "Susie" was eighteen, and that he did not recall the chats in which "Susie" told him she was fourteen.

## Discussion

### (1.)

### Jury Instructions

The government charged Cherer under 18 U.S.C. § 2422(b), which provides,

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a

criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).

To explain the offense to the jury, the court delivered the following two jury instructions. First, jury instruction twelve stated,

> The defendant is charged in the indictment with Coercion and Enticement . . . . In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt[.]
>
> *First*: defendant used a facility of interstate commerce;
>
> *Second*: defendant intended to knowingly persuade, induce, entice or coerce "Susie" into engaging in a sexual act for which he could be prosecuted under the laws of the State of Nevada; and
>
> *Third*: the defendant did something which was a substantial step toward committing the crime, with all of you agreeing as to what constituted the substantial step.
>
> It is a crime to attempt to persuade, induce, entice, or coerce a minor into engaging in a criminal sexual act for which a person may be criminally prosecuted under the laws of the State of Nevada.
>
> . . .
>
> Under the laws of the state of Nevada, it is an offense to attempt to commit Statutory Sexual

Seduction. Nevada law defines "sexual seduction" as "[o]rdinary sexual intercourse, cunnilingus or fellatio committed by a person 18 years of age or older with a person under the age of 16 years."

Second, jury instruction thirteen stated,

The defendant is charged with Coercion and Entice-ment. Title 18, United States Code, Section 2422(b) provides, in pertinent part, that a person is guilty of violating it if that person: who [sic], using . . . any facility or means of interstate . . . commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

Cherer asked the court to add the following instruction: "In order to find the defendant guilty you must find beyond a rea-sonable doubt that the defendant actually believed "Susie" was under the age of 16 years [the age of consent in Nevada]." The court declined to do so.

On appeal, Cherer argues that the court committed prejudi-cial error by refusing to deliver his proposed instruction because, according to Cherer, the instructions as given pre-vented him from effectively presenting his defense to the jury.

This court reviews *de novo* "whether the district court's instructions omitted or misstated an element of the charged offense." *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002) (citing *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997)). "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Frega*, 179 F.3d 793, 807 n.16 (9th Cir. 1999) (citing *United States v. Moore*, 109 F.3d 1456, 1465 (9th Cir. 1997)).

And "[t]he trial court has substantial latitude so long as its instructions fairly and adequately cover the issues presented." *Id.* (citing *United States v. Garcia*, 37 F.3d 1359, 1364 (9th Cir. 1994)).

**[1]** Under 18 U.S.C. § 2422(b), when a defendant, like Cherer, has targeted an adult decoy rather than an actual minor, the Ninth Circuit requires that the defendant have believed the target was a minor. *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004) ("[I]t is apparent that the term 'knowingly' refers both to the verbs — 'persuades, induces, entices, or coerces' — as well as to the object — 'a person who has not achieved the age of 18 years.' ") (citations omitted) (interpreting 18 U.S.C. § 2422(b) in a case involving a sting operation). Thus, Cherer's belief regarding "Susie's" age is an element of the crime.[1]

**[2]** The government argues that jury instructions twelve and thirteen adequately described the requisite state of mind. We disagree. Even if not inaccurate, the instructions did not explain that the jury was required to find that Cherer believed

---

[1]For example, in § 2422(b) prosecutions involving government sting operations, the Eleventh Circuit suggests using the following instruction, which is similar to the one Cherer proposed,

> The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First: That the Defendant knowingly used [the mail] [a computer] [describe other interstate facility as alleged in indictment] to attempt to persuade, induce, entice [or coerce] an individual under the age of eighteen (18) to engage in sexual activity, as charged; *Second: That the Defendant believed that such individual was less than eighteen (18) years of age*; Third: That if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under the law of [identify the state]; and Fourth: That the Defendant acted knowingly and willfully.

*Eleventh Circuit Pattern Jury Instructions, Criminal Cases* (2003) (emphasis added), *available at* www.ca11.uscourts.gov/documents/jury/crimjury.pdf.

that the target, "Susie," was a minor. In other words, neither appropriately connected the requisite state of mind — knowledge — with the statute's object — a minor victim.

[3] In this case, however, omitting an element from the jury instructions constituted harmless error. "Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing that they prejudiced the defendant." *Frega*, 179 F.3d at 807 n.16 (citing *United States v. de Cruz*, 82 F.3d 856, 864-65 (9th Cir. 1996)). Erroneous jury instructions constitute harmless error if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1197 (9th Cir. 2000) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). Omitting an element is harmless if "the omitted element [is] uncontested and supported by overwhelming evidence." *Gracidas-Ulibarry*, 231 F.3d at 1197 (citing *Neder*, 527 U.S. at 17). The Supreme Court has noted, however, that a jury instruction error would not be harmless if a defendant "contested the omitted element and raised evidence sufficient to support a contrary finding." *Neder*, 527 U.S. at 19.

[4] The government's evidence overwhelmingly shows that Cherer believed "Susie" was fourteen years old. During three different online chats, Cherer asked "Susie" how old she was, and she replied that she was fourteen each time. Specifically, during their initial chat, when "Susie" told Cherer she was fourteen, Cherer replied, "cool, fourteen is cool . . . ." These explicit references to "Susie's" age are sufficient to conclude that Cherer held the requisite state of mind.

In addition, however, all of the following facts demonstrate that Cherer believed he was communicating with a minor. First, on July 8, 2005, when Cherer wanted to call "Susie," she told him she was afraid her mother would answer. Cherer offered to hang up if her mother answered. On July 18, 2005, after "Susie" gave Cherer her phone number, her phone rang,

and when an adult male FBI agent answered, the caller hung up. The next day, July 19, 2005, "Susie" apologized to Cherer for not picking up the phone and told him her father had answered. Second, on July 18, 2005, "Susie" sent Cherer a photograph, purportedly of "Susie," but actually of an FBI agent, taken when she was around fourteen years old. Third, on at least two occasions, Cherer asked "Susie" whether she would be allowed out of the house to meet him. Once, she told him she would have a friend create an alibi for her if she left. Another time Cherer asked "Susie" if her mother kept her on "lock down." Fourth, on one occasion, when discussing plans to meet, "Susie" told Cherer she could not get together that night because her friend's mother had gotten them tickets to a movie. And fifth, when Cherer asked "Susie" for her street address, she said she did not want to give it to him because she did not want her parents to find out she had met him. In sum, these facts portray "Susie" as a fourteen-year-old teenager, under close parental supervision, and nothing about the communications between Cherer and "Susie" indicates that Cherer believed otherwise.

On appeal, Cherer argues that he thought he and "Susie" were roleplaying. At trial, however, Cherer's counsel scarcely raised this roleplaying defense. On the contrary, defense counsel argued in closing that: (1) Cherer's post-arrest statements were unreliable because they were not recorded; (2) someone other than Cherer, but using Cherer's screen name, was responsible for the enticing communications to "Susie"; (3) the government manipulated the transcripts of the online chats between Cherer and "Susie"; (4) Cherer did not believe "Susie" was under sixteen; and (5) Cherer did not take a substantial step toward the commission of the crime. This court will not normally entertain arguments, like Cherer's roleplaying defense, raised for the first time on appeal. *See*, *e.g.*, *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1321 (9th Cir. 1998) (applying the " 'general rule' against entertaining arguments on appeal that were not presented or developed before the district court").

**[5]** Nonetheless, even if we were to consider Cherer's role-playing defense, it is unpersuasive. The only evidence Cherer invokes to prove that he thought he was roleplaying are his own post-arrest statements, many of which undercut rather than support his claim. After being arrested, Cherer told the FBI that: (1) he thought "Susie" was eighteen years old because of the way she talked; (2) the girl in the photograph "Susie" sent to him looked to be in her twenties; (3) he did not recall the chats in which "Susie" told him she was fourteen; and (4) if he had known "Susie" was fourteen he would not have wanted to meet her. At no point did Cherer say or even indicate that he believed he had been roleplaying with an adult. Moreover, Cherer's statements suggest that he thought "Susie" was a real person, but that he did not know her age. For example, he said he did not recall "Susie" telling him three times that she was fourteen. Roleplaying, on the other hand, would have required Cherer to know that "Susie" was a fiction created by an adult. Indeed, if Cherer believed he was roleplaying, it would have been unnecessary for him to deny being told "Susie's" age — being told her "age" would have been part of the act. Thus, the evidence would not have supported a roleplaying defense. *See*, *e.g.*, *Gracidas-Ulibarry*, 231 F.3d at 1197-98 (finding that the court's erroneous omission of the intent element from the jury instructions was harmless because overwhelming evidence supported a finding of intent — even though the defendant claimed he was asleep, and could not have had the requisite intent).

**[6]** In sum, because overwhelming evidence proves that Cherer believed "Susie" was fourteen, the court's failure to give a clear instruction was harmless.

### (2.)

### Evidence of Cherer's Prior Conviction and AOL Complaints

In 2001, Cherer was convicted in Nevada state court of lewdness with a child under fourteen, annoyance of a minor,

and contributing to the delinquency and neglect of children. He committed this crime by meeting two girls — ages eleven and twelve — in an AOL chat room, arranging a meeting with them, bringing them to his house, and touching one of them sexually. When Cherer began his relationship with "Susie," he was serving probation for the 2001 conviction.

Moreover, on April 2, 2005, and again on July 9, 2005, AOL received complaints ("AOL complaints") from users alleging that another user, screen name "G8rwith8nGV" — Cherer's screen name — had communicated with them using inappropriate sexual language. After each complaint, AOL blocked Cherer's access, and each time Cherer called AOL to have it restored.

After a hearing, the district court admitted evidence of Cherer's prior conviction and the AOL complaints pursuant to FRE 404(b).

**[7]** This Court reviews a district court's admission of evidence, including the decision that probative value exceeds unfair prejudice, for an abuse of discretion. *See United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc) (citing *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)). Harmless errors do not warrant reversal. *See Romero*, 282 F.3d at 688 (citing *United States v. Derington*, 229 F.3d 1243, 1247 (9th Cir. 2000)).

According to Federal Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). The Ninth Circuit has held that evidence may be admitted pursuant to 404(b) if "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *Romero*, 282 F.3d at 688 (quoting *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000)). If evidence satisfies Rule 404(b), "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Romero*, 282 F.3d at 688 (quoting *Chea*, 231 F.3d at 534). Indeed, as the Ninth Circuit recently articulated,

> Rule 404(b) is a rule of inclusion — not exclusion — which references at least three categories of other "acts" encompassing the inner workings of the mind: motive, intent, and knowledge. Once it has been established that the evidence offered serves one of these purposes . . . the "only" conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

*Curtin*, 489 F.3d at 944.

Cherer argues that Rule 404 or 403 should have barred evidence of his prior conviction and the AOL complaints. We disagree. The district court properly exercised its discretion to admit both pieces of evidence.

[8] First, Cherer's prior conviction tends to prove his intent and his modus operandi. Cherer has argued that he lacked the requisite intent because he did not believe "Susie" was fourteen. Moreover, following his arrest, Cherer told the FBI that if he had known "Susie" was fourteen he would not have wanted to meet her.[2] Cherer's prior conviction helps to prove

---

[2] Cherer's statements to the FBI were admitted at trial through the testimony of a prosecution witness. Defense counsel did, however, rely on Cherer's statements in closing argument to prove lack of intent.

otherwise. Cherer was previously convicted for meeting two minor girls — ages eleven and twelve — in an online chat room, enticing them to his home, and engaging one of them in kissing, touching, and petting. The facts of his prior conviction are strikingly similar to those of his current conviction. In an analogous case, this court held that,

> evidence [that] described factually similar incidents that center on the inducement of a minor . . . was highly probative of [the defendant's] intent and modus operandi with respect to the present act. In both instances, [the defendant] contacted a minor . . . over IM for the purpose of soliciting sexual activity, [and] arranged to meet . . . . The factual difference between the two acts is that, in this case, [the defendant] followed his intentions to completion; this difference does not warrant exclusion under Rule 404(b).

*United States v. Dhingra*, 371 F.3d 557, 566-67 (9th Cir. 2004) (applying Rule 404(b) in the context of an 18 U.S.C. § 2422(b) case). Similarly, Cherer's prior conviction makes it more likely that he harbored the requisite intent with regard to "Susie." *See*, *e.g.*, *id.* at 565 (noting that 404(b) evidence "was all the more relevant given [defendant]'s denial of his criminal intentions"). The only difference between Cherer's prior conviction and the present case is that the prior conviction involved targeting an actual minor rather than an adult decoy. As in *Dhingra*, this difference does not warrant exclusion under Rule 404(b).

**[9]** Second, the court properly admitted the AOL complaints. Each complaint alleges that Cherer communicated in a sexually graphic manner. The language used in these offensive communications closely resembles that used in the enticing communications to "Susie." For example, the AOL complaints allege Cherer asked one AOL user, "[E]ver given a blow job?" and offered another two hundred dollars in

exchange for oral sex. Similarly, Cherer asked "Susie," "[E]ver given a BJ?" and offered to buy her thong underwear in exchange for oral sex. Thus, the complaints tend to prove Cherer's intent and plan to use AOL to make enticing, sexually graphic communications. That the ages of the AOL users with whom Cherer communicated offensively are unknown diminishes the evidentiary weight of the complaints, not their admissibility.

**[10]** The AOL complaints also tend to prove identity, although the court chose not to rely on this basis for admission.[3] The complaints allege that Cherer used offensive language similar to the language used with "Susie." At trial, Cherer based his defense, in part, on the theory that someone else had used his screen name to communicate with "Susie." Evidence that Cherer used similar language with other AOL users undercuts that defense. Thus, even were we to find that the court erred by admitting the AOL complaints to prove Cherer's intent or plan, the error would be harmless because the court could have properly admitted the complaints to prove identity. *See*, *e.g.*, *United States v. McCollum*, 732 F.2d 1419, 1424 (9th Cir. 1984) (finding that the trial court's error in admitting evidence for the stated purpose was harmless because the evidence could have been admitted for another purpose); *United States v. Mehrmanesh*, 689 F.2d 822, 831 n.10 (9th Cir. 1982) (same).

---

[3]The government has argued, at a pre-trial hearing and on appeal, that the AOL complaints were probative of identity, but the court never explicitly named identity as a proper purpose of admission. Instead, the court stated that the AOL complaints tend to prove Cherer's intent and plan. Moreover, in crafting jury instruction nineteen, which explained for which purposes the jury could consider the 404(b) evidence, the court explicitly eliminated identity from the list of permissible purposes. The government agreed to the final formulation of the limiting instruction, which did not reference identity, but provided instead that the jury may consider the 404(b) evidence "only as it bears on the defendant's intent, preparation, plan, knowledge, absence of mistake and for no other purpose."

**[11]** Additionally, Cherer's argument that the district court did not engage in the proper 403 balancing lacks merit. At a pre-trial hearing, the court considered all the 404(b) evidence the Government offered. The court admitted the prior conviction and AOL complaints, but barred other evidence because it was too prejudicial, demonstrating that it conducted the 403 balancing. *See*, *e.g.*, *United States v. Rrapi*, 175 F.3d 742, 749 (9th Cir. 1999) ("In allowing Rule 404(b) evidence, a district court is not required to recite the corresponding Rule 403 balancing analysis for the record. It is enough that this court can conclude, based on a review of the record, that the district court considered Rule 403's requirements.") (internal citations and quotations omitted). The evidence the court did admit was probative of intent, plan, and identity — issues made relevant by the defense. Moreover, the risk of unfair prejudice, which the court reduced by delivering a limiting instruction, did not substantially outweigh the probative value of the evidence. Fed. R. Evid. 403; *see also, e.g.*, *Dhingra*, 371 F.3d at 566-67 (affirming the district court's admission of evidence of the defendant's online chats with other girls to prove intent, and noting that "the danger of undue prejudice is low. The district court cabined potential prejudice by . . . explicitly instructing the jury to consider the testimony 'only as it bears on the defendant's intent. . .' ").

## (3.)

## Cherer's Sentence

We review Cherer's within-Guidelines sentence of 293 months for reasonableness, *United States v. Booker*, 543 U.S. 220, 261 (2005), which, as the Supreme Court recently declared, requires a two-step analysis. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on

clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* If it is determined that the district court's decision was procedurally sound, we must then "consider the substantive reasonableness of the sentence imposed under an abuse of discretion standard." *Id.*

**[12]** In this case, the district court committed no significant procedural error. Cherer's sentence is within, though at the top of, the Guidelines range of 235 to 293 months. Cherer has not challenged the Guidelines calculation. At the sentencing hearing, the judge properly noted that the Guidelines are advisory, and that the factors provided by 18 U.S.C. § 3553(a) would guide his analysis. The record reflects that the judge considered each relevant sentencing factor. He did not explicitly reference them all, but the law does not require him to do so. *See United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006) (noting that the requirement to consider the § 3553(a) factors "does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence"); *see also, e.g., United States v. Kimbrough*, 125 S. Ct. 558, 575 (2007) (stating that the district court properly "addressed the *relevant* § 3553(a) factors") (emphasis added). Cherer has not argued that the sentencing judge relied on erroneous facts. And we are satisfied that the sentencing judge provided an adequate explanation for the sentence.

**[13]** Since the district court committed no procedural error, the only question remaining is "whether the sentence was reasonable — i.e., whether the District Judge abused his discretion in determining that the § 3553(a) factors supported" a sentence at the top of the Guidelines range. *Gall*, 128 S. Ct. at 600. This review requires deference to the district court's decision, and should not resemble a *de novo* review. *Id.* Even though *Gall* dealt with a below-Guidelines sentence, the Court clearly stated that this deferential standard of review applies to "all sentencing decisions — whether inside or outside the Guidelines range." *Id.* at 596. In addition, "[i]f the

sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Id.* at 597 (citing *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007)). The Ninth Circuit has not applied this presumption, *see*, *e.g.*, *United States v. Zavala*, 443 F.3d 1165, 1170-71 (9th Cir. 2006), but we note that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.' " *Kimbrough*, 128 S. Ct. at 562-63 (quoting *Rita*, 127 S. Ct. at 2464-65).

**[14]** Nevertheless, even without presuming that a within-Guidelines sentence is reasonable, we cannot say that Cherer's within-Guidelines sentence is unreasonable. The district court considered the appropriate factors, and assigned reasonable weight to each. As the Supreme Court noted in *Gall*, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Gall*, 128 S. Ct. at 597 (quoting Brief for Federal Public and Community Defenders et al. as *Amici Curiae* 16). Specifically, the record clearly establishes that the judge considered the circumstances of Cherer's crime and the nature of his prior offense for which he was serving probation. The court properly considered Cherer's argument that the lack of a victim should weigh in favor of a shorter sentence, but rejected it because, while a fortunate circumstance, it did not make Cherer's conduct less blameworthy. Even though it would have been impossible for Cherer to complete his attempted crime because his target was a decoy, he still exhibited a proclivity to commit this sort of crime, and an inability to control his criminal, sexual impulses — factors that a sentencing judge may reasonably take into account. The court also considered the facts of Cherer's prior crime, which, like his current crime, involved Cherer's use of the internet to entice a minor into an illegal sexual relationship. For his prior crime, at the request of the victims' parents,

the Nevada court sentenced Cherer to probation. The dissent argues that the district court should have given more consideration to why the state court sentenced Cherer to probation because state courts have more experience dealing with sex crimes than do federal courts. But neither the relative dearth of federal sex crime prosecutions nor the leniency of Cherer's state sentence require the district court to discount the weight of Cherer's prior crime when determining his current sentence. Rather, because Cherer committed his current crime while serving probation for a prior, similar crime — and thus did not take advantage of the state court's leniency — it was reasonable for the district court to conclude that a lengthy prison sentence was necessary to protect the public.

**[15]** The dissent relies on *Kimbrough* to criticize the district court's failure to consider that Cherer's sentence of almost twenty-five years for an attempt significantly exceeds many sentences available for violent, completed sex crimes like rape. In *Kimbrough*, the Supreme Court held that a district judge may reasonably impose a below-Guidelines sentence for an offense involving crack cocaine because of the long-criticized disparity, with racial implications, between sentences involving crack cocaine and those involving powder cocaine. *Kimbrough*, 125 S. Ct. at 576. But *Kimbrough* cannot be read to require such a comparison, and certainly not in a case like Cherer's that does not involve a drug offense. Indeed, *Gall* points out that for drug offenses the Guidelines are not tied to empirical evidence, but are instead keyed to "the statutory mandatory minimum sentences that Congress established for such crimes." *Gall*, 128 S. Ct. at 594 n.2. *Kimbrough* addressed the effect of this distinction "on a district judge's authority to deviate from the Guidelines range in a particular drug case." *Id.* Accordingly, the district judge who sentenced Cherer was not *required* to consider the much more lenient sentences available for other violent and arguably more heinous sex offenses, nor does the disparity render Cherer's sentence unreasonable. If it did, a large number of the Guidelines would have to be found unreasonable because

many of them recommend more severe punishments for non-violent offenses than for violent ones. Moreover, with respect to Cherer's crime — i.e., using the internet in an attempt to entice a minor into an illegal sexual relationship — it is not unreasonable for the Guidelines to advise a sentence commensurate with or even exceeding sentences for violent, completed crimes when he has previously committed a similar crime. And whether the attempted sexual abuse of a fourteen-year-old girl by a thirty-five-year-old man is less morally reprehensible than a completed rape of an adult in every circumstance is a judgment about which reasonable minds can differ.

In sum, although we believe the almost-twenty-five year sentence may be unduly harsh, we are not the sentencing judges. Indeed, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 128 S. Ct. at 597. Thus, we do not conclude that the sentence was unreasonable.

The conviction and sentence are

**AFFIRMED.**

---

NOONAN, Circuit Judge, concurring and dissenting:

I concur in affirming Cherer's conviction. I dissent as to his sentencing.

*Gall v. United States*, 128 S.Ct. 586 (2007), and *Kimbrough v. United States*, 128 S.Ct. 558 (2007), have clarified certain uncertainties and in doing so made crystal clear the role of the Sentencing Guidelines and the respect owned them.

The Guidelines are the starting point for the district judge deciding on a sentence. *Gall*, 128 S.Ct. at 596; *Kimbrough*,

128 S.Ct. at 574. The Guidelines are a benchmark for the sentencing judge. *Id*. The Guidelines must be taken into account.

At the same time, the Guidelines are completely advisory, not mandatory. *Gall,* 128 S.Ct. at 594; *Kimbrough,* 128 S.Ct. at 564, 569. The district judge should not presume that their range is reasonable. *Gall,* 128 S.Ct. at 596-97. For the sentencing judge, the Guidelines are only one factor to be considered in weighing whether a sentence will achieve the goals set by 18 U.S.C. § 3553(a)(2). *Kimbrough*, 128 S.Ct. at 564. The sentence is to be "individualized." *Gall*, 128 S.Ct. at 597.

These clarifications are comprehensive. More particularly, *Kimbrough* holds that the district judge in that case was right to take into account the disparity in sentences involving crack cocaine and those involving powder cocaine and by such comparison to determine that the Guidelines on crack were not reasonable. *Kimbrough,* 128 S.Ct. at 564. By analogy, this kind of comparison of sentences may be applied in other cases where the reasonableness of the sentence is at issue.

On review of the sentence, the principal question is its reasonableness. *Id*. The reviewing court will reverse only for abuse of discretion, not for disagreement with the district court's considered conclusion. *Gall*, 128 S.Ct. at 597. The reviewing court may but need not consider the Guidelines range reasonable. *Id*.

Apart from these holdings as to the place of the Guidelines, *Gall* and *Kimbrough* are instructive on the procedural steps that the sentencing judge must take. After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Id*. at 596. In so doing, he may not presume that the Guidelines range is reasonable. *Id*. at 596-97. He must make an individualized assessment based on the facts presented. *Id*. at 597.

To turn to the case at hand, Cherer was convicted of the crime of attempting to seduce a minor on the internet. Although the statute under which he was convicted enumerates "coercion" among the acts prohibited by it, no coercion by Cherer was shown. His crime was committed by words in the imaginary world of a chat room.

The district court in the sentencing gave counsel and the defendant opportunity to address the court on the sentence. The district court stated that the Sentencing Guidelines were advisory. The district court stated that the court's purpose in sentencing was to achieve the purposes of 18 U.S.C. § 3553(a)(2). On the face of the proceedings, they conformed to the law. They, however, did not.

Tension may seem to exist between the table of points provided by the Guidelines and an individualized sentence. If a sentence is to be "individualized," *see Gall*, 128 S.Ct. at 597, the sentence is to be shaped to the specific details of the offense of conviction and the specific characteristics of the defendant. The defendant is not a convenient abstraction such as "a pedophile" but a human being who cannot be so summarily categorized. It may take the sentencing judge effort and empathy to address the person before him. The judge has no choice if he is to follow the law.

In two respects, the sentencing court did not do what the law required. First, it did not consider at all that Cherer responded to a temptation set up by the government and that his response to the temptation was ineffective. Of course, Cherer was not entrapped in a legal sense: he was ready and willing to commit the crime. Of course, the law permits an attempt to be punished as severely as a completed crime. Nonetheless, in weighing the sentence, it would be unreasonable for the sentencing court not to take some account of these facts.

In sentencing Cherer, the district court declared its indifference to state sentences for the same offense and, in particular,

its indifference to what Cherer's state crime consisted of or why the state court had sentenced him to probation for it. That he was a violator of probation was enough for the court. But Cherer's federal sentence was increased not for violation of probation but because he was categorized as a sex offender under state law. The state crime increased his score on the Guidelines' chart by eight and so materially increased the range of the federal sentence when that chart was the judge's guide.

The Sentencing Commission collects statistics on sentencing in the federal courts. It collects all cases involving sexual offenses whether they involved rape, sex with a minor or solicitation of a minor. The rationale of this grouping must be that there are few sexual offenses that are federally prosecuted. In 2006, there were, nationally, 256; in this circuit, there were 61. United States Sentencing Commission, Office of Policy Analysis, 2006 Datafile. The paucity of prosecution (which characterizes earlier years, too) is accounted for by the limited number of places under federal jurisdiction where sex crimes could occur. The number has increased only with the arrival of the internet and federal prosecutions for its use.

That means that it is the states and the state courts that have substantial experience in dealing with sex offenses. Depending on the case, what was done in a state proceeding will be relevant to the reasonableness of the federal sentence. The sentencing court here needed to know what Cherer had done and why the state court had put him on probation. Without this information, the addition of eight points to Cherer's point score was an act that could have been performed by a machine; it was not a judicial assessment of the individual before the court.

The eight point enhancement, plus two points for his use of a computer, gave Cherer a point score of 34. Rape within federal jurisdiction would yield a score of 30 and a sentence range of 8-17.5 years. Cherer was sentenced to just under

twenty-five years. Sentencing Guidelines or application of them are not rational if they yield a sentence for Cherer's crime greater than that for rape. To take a concrete example that I am familiar with, in *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), the defendant in the early morning entered the home of the victim and raped her; the sanctity of the home and the chastity of the victim were both violently violated. The defendant's sentence was seven years and three months' imprisonment and supervised release for five years. It is difficult for me to believe that Cherer's clumsy effort to obtain forbidden sex was over three times more heinous than that of James.

The observation may be made that the Guidelines provide sentencing ranges for several nonviolent crimes that are greater than its ranges for violent crimes. Two answers may be offered. One, the comparison in Cherer's case is made between punishments within the general category of sex offense. Second, the Guidelines may be unreasonable in other instances, but to determine that is not our business here.

Specifically in this case the district court erred in not looking at the circumstances of the crime and in not taking into account the nature of the offense for which Cherer was on probation.

A majority of the judges appear to agree that Cherer's sentence was "unduly harsh." But the court finds the sentence not "unreasonable." That is such a fine distinction as not to be readily comprehensible.

The trial judge is "always in a superior position" to know the facts. *Gall*, 128 S.Ct. at 598. That position does not make presumptively reasonable the sentence he gives. The trial judge will normally be able to follow the procedural rules. That, too, doesn't make his sentence presumptively reasonable.

It is the obligation of this court to review a sentence for "substantive reasonableness." *Id*. How is such reasonableness determined? One way is by comparing sentences of crimes falling in roughly the same generic area. *Kimborough* is exemplary not exclusive in showing how such comparison works.

Dissenting from the survival of the Guidelines in *United States v. Booker*, 543 U.S. 220, 312 (2005), Justice Scalia observed:

> At the other extreme, a court of appeals might handle the new workload by approving virtually any sentence within the statutory range that the sentencing court imposes, so long as the district judge goes through the appropriate formalities, such as expressing his consideration of and disagreement with the Guidelines sentence.

If such becomes the course of review in the court of appeals, we will have abandoned all attempt to determine "substantive reasonableness." *Gall*, 128 S.Ct. at 597. I would reverse and remand.