# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1711

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for |
| | * | the District of Nebraska. |
| Gordon J. Givens, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 14, 2005
Filed: April 11, 2006

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

Following a plea of guilty to bank fraud, the district court departed from the twenty-four to thirty month United States Sentencing Guidelines range suggested by the pre-sentence investigation report (PSR) and sentenced Gordon Givens to time served (Givens had served no time) and five years of supervised release to include a twelve-month term of house arrest, eighty hours of community service and restitution in the amount of $1,220,875. The government appeals, arguing that this sentence is wholly unreasonable. We agree, vacate Givens' sentence and remand for resentencing.

## I.   BACKGROUND

Givens ran a cattle feedlot near O'Neill, Nebraska.  In late 2001, he obtained an operating loan, a line of credit, and residential refinancing from United Nebraska Bank.  Givens pledged various assets as security for the $750,000 operating loan. These supposed assets were later determined to be nonexistent.  Specifically, Givens represented that certain cattle in his feedlot were his and in turn pledged them as collateral when, in truth, the cattle belonged to other ranchers.

In August 2003, Givens approached the bank and told them he would not be able to pay off the loans and admitted to falsifying the computer documents related to the ownership of cattle at his feedlot.  The bank declared a loss of $2,216,088.47. After partial recovery was made through the sale of existing feedlot assets, the loss remained at $1,220,875.

On November 12, 2004, Givens waived indictment and pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344.  The information charged him with executing a scheme to defraud the bank of approximately $900,000.  The parties agreed on the relevant conduct and that the loss to the bank was greater than $400,000 and less than $1,000,000 and that the corresponding fourteen-level sentencing enhancement for that amount was appropriate.  The PSR also included a suggested three-level reduction for acceptance of responsibility.  The government abided by its promise to request that Givens be sentenced at the low end of the suggested twenty-four to thirty month guidelines range.

Prior to sentencing, the U.S. Probation Office submitted a recommendation to the district court suggesting that Givens be sentenced to time served (even though Givens had not yet served any time) followed by a five-year term of supervised release *despite* the suggested twenty-four to thirty month guideline range.  The probation officer substantiated this proposal by stating that Givens had no prior

criminal history, this was not a crime of violence, Givens reported the crime to the bank himself, and Givens likely faced jail time on the corresponding state charges for the same conduct. While the probation officer apparently felt that probation was likely the best option for Givens, it was not authorized by the statutory provisions for this crime.

At sentencing, Givens sought an additional downward departure under chapter five of the guidelines for civic, charitable, or public service; a record of prior good works; and for voluntary disclosure of his offense. At sentencing there were several letters submitted to the district court on Givens' behalf attesting to his moral character and the fact that Givens had already signed over some life insurance policies in an attempt at restitution.

The district court refused to depart on the bases requested by Givens under U.S.S.G. § 5H1.11 even though Givens had taken responsibility for his actions and remained a charitable and civic-minded individual. The district court did, however, depart downward for its own reasons, recognizing Givens' extraordinary post-offense rehabilitation since Givens had stepped forward and had done what he could to make things right. The court also considered other factors it believed took this case out of the heartland of bank fraud cases including: the social concerns of rural agriculture communities struggling to make ends meet in a competitive world market, prompting men like Givens to resort to fraud; the fact that placing Givens in jail would jeopardize his new position of running a cattle operation for the community; and that the bank was partially to blame because it had to have known that the numbers weren't right and, thus, should not have extended the loans.

The district court explained that the imposed, non-custodial sentence would allow Givens to continue to be an asset to his community and would not jeopardize the community which had put Givens in charge of another cattle operation. Simultaneously, the district court intended that the limitations imposed by the house

arrest would keep Givens from participating in many family events, punish Givens for the grief he had caused his community, and account for the "issue" between Givens and the bank concerning the fraud committed by Givens.

## II. DISCUSSION

In imposing sentences, a district court should determine the advisory guideline sentencing range, based on the total offense level, criminal history category, and any appropriate departures from the guidelines. United States v. Shannon, 414 F.3d 921, 923 (8th Cir. 2005). The district court may then vary from the advisory guideline range based on the factors set forth in section 3553(a), so long as such a variance is reasonable. Id. On appeal, we start by considering whether the district court properly calculated the guideline range, whether it erred in any departure decision, and then whether the sentence imposed was reasonable. United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005).

Neither party challenges the initial guideline range of twenty-four to thirty months set forth in the PSR. The district court did depart, however, based upon Givens' post-offense rehabilitation and other factors it thought removed Givens' situation from the heartland created by other similar cases. We review the court's decision to depart for abuse of discretion. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005).

The government argues that the district court's reasons for imposing a non-custodial sentence in this case are invalid and wholly unreasonable and in no way justify such a huge deviation from the suggested, advisory guideline range. It states that Givens' circumstance is in no way atypical or extraordinary–that Givens' own disclosure is of no consequence because the discovery of the fraud was imminent and that oftentimes people will pledge insurance policies or the like to begin pre-sentence restitution. Further, the government points out that even if the bank is at fault in any

way through its own negligence or gullibility, its lapse does not diminish Givens' criminal act.  And, according to the government, there is no support for the district court's pronouncement that O'Neill is a community struggling at the hands of the competitive world agricultural market.  By failing to give Givens any jail time, the government contends, the sentencing disparity with other defendants similarly situated is increased and encourages others to engage in similar behavior.

We agree with the government that the "prison is not the answer" sentence doesn't pass muster in this case.  While we certainly could foresee sufficient reasons for departing from the suggested sentence, the district court abused its discretion in departing so drastically from the calculated guidelines range.  First, and foremost, Givens' alleged post-offense rehabilitation is not extraordinary.  See United States v. Rogers, 400 F.3d 640, 641-42 (8th Cir. 2005) (recognizing that a district court must explain any extraordinary or atypical factors justifying a departure for extraordinary post-offense rehabilitation and refusing to justify the departure for Rogers on that basis), cert. denied, 126 S. Ct. 1020 (2006).  In fact, it is unclear exactly how Givens has been "rehabilitated" given his prior history of upstanding living outside the perpetrated fraud.  Possibly the district court was referring to Givens' forthright acceptance of responsibility but we do not conjecture on that today.  At any rate, while Givens' efforts are certainly commendable, they are not atypical or extraordinary.  The guidelines adequately contemplate ordinary post-offense rehabilitation under section 3E1.1.  U.S.S.G. § 5K2.0(d)(2).

Likewise, the socio-economic status of the rural midlands and any insinuation that the bank somehow shares blame with Givens are irrelevant determinants expressed in the sentencing colloquy and certainly do not support this particular downward departure.  Finally, limiting Givens' jail time in order to help him retain his worth in the community, while relevant, does not support the extent of the departure here.  Thus, based on the factors relied upon by the district court at sentencing to

arrive at the non-custodial sentence in this case, the departure was impermissible and the district court abused its discretion.

In light of our conclusion that the district court abused its discretion, we likewise determine that the sentence imposed was unreasonable. As to the reasonableness inquiry, even though a district court need not categorically rehearse each of the section 3553(a) factors when it imposes its sentence–it is enough to calculate the range accurately and explain why a defendant deserves more or less–the further the judge's sentence departs from the guidelines sentence, the more compelling the section 3553(a) justification must be. The judge must offer reasons that allow the court of appeals to assess the reasonableness of the sentence imposed. United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006). Further, "we will not infer a reasoned exercise of discretion from a record that suggests otherwise or is silent." United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005).

In this case the district court gave significant weight to Givens' history and characteristics and showed a great deal of sympathy toward him. The court gave too much weight to these factors and not enough to the other portions of section 3553(a). The "time-served" plus house arrest sentence does not properly consider Congress's desire to avoid unwarranted sentencing disparities and the brevity of the sentence fails to reflect the seriousness of the offense, promote respect for the law or provide just punishment. 18 U.S.C. § 3553(a)(1)(A), (6).

## III.   CONCLUSION

There is nothing so extraordinary here that supports a substantial deviation from the results contemplated by Congress and the resulting sentence is unreasonable. Accordingly, the judgment of the district court is vacated and the case is remanded for resentencing consistent with this opinion.

_____