**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

DUNCAN WILLIAM EDWARDS,
*Defendant-Appellee.*

No. 08-30055
D.C. No.
CR-03-00058-DWM

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

DUNCAN WILLIAM EDWARDS,
*Defendant-Appellee.*

No. 08-30056
D.C. No.
CR-04-00009-DWM

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DUNCAN WILLIAM EDWARDS,
*Defendant-Appellant.*

No. 08-30059
D.C. Nos.
9:04-cr-00009-
DWM-1
9:03-cr-00058-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
August 4, 2009—Seattle, Washington

Filed February 16, 2010

Before: Harry Pregerson, Carlos T. Bea and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Pregerson;
Partial Concurrence and Partial Dissent by Judge Bea

**COUNSEL**

William Mercer, United States Attorney, Billings, Montana, for the appellant-cross-appellee.

John Rhodes, Assistant Federal Defender, Missoula, Montana, for the appellee-cross-appellant.

**OPINION**

PREGERSON, Circuit Judge:

In 2004, Duncan W. Edwards pleaded guilty to one count of bankruptcy fraud in violation of 18 U.S.C. § 152(9) and one count of making a false statement to a bank in violation of 18 U.S.C. § 1014. Although the advisory Sentencing Guidelines range called for twenty-seven to thirty-three months' incarceration, the district court sentenced Edwards to five years' probation (the maximum term of probation), seven months of which was to be served under house arrest, a $5,000 fine, and a special assessment of $100 on each count of conviction. After the Government appealed and the case was remanded to the district court, the district court imposed the same sentence. After a second appeal and a second remand to the district court, the district court imposed the same sentence of probation but added a restitution order in the amount of $102,696.07. For the third time, the Government challenges the district court's sentence as substantively unrea-

sonable. Edwards cross-appeals from the district court's order of restitution.

## I.  BACKGROUND

Duncan W. Edwards is no stranger to the criminal justice system. In the early 1980s, Edwards made misrepresentations to banks in Arizona that allowed him to obtain hundreds of thousands of dollars worth of loans. Edwards admitted that he made misrepresentations to obtain the loans and pleaded no contest to felony theft charges in Arizona state court on October 21, 1991. The state court ordered Edwards to pay restitution of $3,057,916.01 to the FDIC, and to serve five years' probation. The state court later extended probation until July of 2000.

After his Arizona conviction, Edwards relocated to Montana. In early 1998, while still on probation for his Arizona felony, he filled out a loan application in Montana and indicated that he had significant assets. He did not disclose the $3 million FDIC obligation arising from his Arizona conviction. On December 15, 1998, Edwards filed for bankruptcy personally and for his company, Adventure Motorsports. Subsequently, a Chapter 7 bankruptcy trustee was appointed. Contrary to Chapter 7 disclosure requirements, Edwards did not disclose all his assets and liabilities, including the $3 million obligation to the FDIC arising out of his Arizona state conviction, an expected tax return of $28,000, and other assets together worth nearly $14,000.[1]

---

[1] Edwards initially filed for Chapter 13 bankruptcy, but the matter was converted from a Chapter 13 to a Chapter 7 bankruptcy. A Chapter 13 bankruptcy leaves the individual debtor in control of its assets but the debtor must use income earned during Chapter 13 to pay off creditors. 1 *Collier on Bankruptcy* ¶ 1.03[6] (Alan N. Resnik & Henry J. Sommer eds., 15th ed. rev.). In a Chapter 7 bankruptcy, the debtor's assets are liquidated and distributed to creditors. There is no repayment plan. *In re Coleman*, 560 F.3d 1000, 1003 n.2 (9th Cir. 2009).

In addition to failing to list these assets and liabilities, Edwards also initially did not list certain stock options owned by a corporation of which he owned 100% of the shares. Edwards amended his Chapter 7 bankruptcy filings to show that the corporation owned the stock options. Although he earlier had valued those stock options at $189,000 on his loan application, he valued the options at $0 in his bankruptcy filings.

During bankruptcy proceedings, the Chapter 7 Trustee noticed that the stock's price had jumped. By the time the Trustee was able to intervene, Edwards had exercised the bulk of the stock options, receiving net proceeds of $445,000. The Trustee was able to recover approximately $417,000 of the proceeds.

On December 20, 2000, a Bankruptcy Judge approved a Settlement and Release Agreement between Edwards, the Bankruptcy Trustee, and several of Edwards's victims. Among other provisions, the Settlement Agreement provided that "[t]his Consent shall not be used or construed as an admission of liability by any party hereto for any purpose, except as otherwise expressly provided herein." Each party to the Settlement Agreement agreed to release its claims against Edwards.

Edwards was criminally indicted in December 2003. In May 2004, he pleaded guilty to one count of bankruptcy fraud in violation of 18 U.S.C. § 152(9) and one count of making a false statement to a bank in violation of 18 U.S.C. § 1014.

On September 10, 2004, the district court sentenced Edwards to concurrent sentences of probation for five years, seven months to be served under house arrest, a $5,000 fine, and a $100 special assessment on each count of conviction. The Government appealed. While the case was pending before our court, the United States Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), and this court

decided *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc) ("*Ameline II*").

In accordance with *Ameline II*, a divided panel of this court reversed and remanded Edwards's case "for the district court to determine whether it would have imposed a different sentence had it understood that the Guidelines were advisory." *United States v. Edwards*, 158 F. App'x 930, 931-32 (9th Cir. 2005) (unpublished) (citing *Ameline II*, 409 F.3d 1073).

On February 9, 2006, in a short order, the district court concluded that it would not have imposed a different sentence had it known the Sentencing Guidelines were advisory, and reimposed the same sentence as it had previously. The district court did not request the views of the parties in writing or convene a hearing. The Government again appealed and challenged the reasonableness of the sentence. This court again reversed and remanded in a memorandum disposition because it was unable to assess the reasonableness of Edwards's sentence based on the record before it. *United States v. Edwards*, Nos. 06-30163, 06-30165, 2007 U.S. App. LEXIS 20335, (9th Cir. Aug. 22, 2007) (unpublished). The *Edwards II* court vacated Edwards's sentence and remanded for "full resentencing on an open record." *Id.* at *2 (citing *United States v. Matthews*, 278 F.3d 880, 885-86 (9th Cir. 2002) (en banc)).

On remand, the United States Probation Office prepared a new pre-sentence report, and the parties filed new sentencing memoranda. On January 17, 2007, the district judge held a sentencing hearing.

The district court first began by observing that the applicable advisory Sentencing Guidelines range called for a period of incarceration between twenty-seven to thirty-three months. The court then turned to each of the factors in 18 U.S.C. § 3553(a).

In accordance with § 3553(a)(1), considering the "nature and circumstances of the offense and the history of the char-

acteristics of [Edwards]," the district judge observed that Edwards appeared to be a much changed individual "than the person who was somehow engaged in illegal conduct in Arizona." The district judge noted that the advisory sentencing range had been calculated based on the loss intended by Edwards rather than the actual loss. The district judge was of the view that the Guidelines range, which was calculated using the intended loss, overstated the circumstances of Edwards's case. While acknowledging Edwards's felony conviction in Arizona, the district court was of the opinion that Edwards would not engage in similar conduct in the future and took special note of Edwards's sincerity during allocution.

The district court found that a probationary sentence and a requirement that Edwards make restitution payments satisfied the statutory requirement that the court "impose a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

The district court also considered the testimony regarding Edwards's conduct over the five years prior to the resentencing hearing, and was of the opinion that "there's nothing to be gained based on the circumstances of the offense and his history and characteristics by incarcerating him."

Considering the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), the district court acknowledged that Edwards's crimes were "extremely serious," but observed that Edwards's "changes in his life prior to any kind of indictment indicate a respect for the law."

With regard to providing "adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), the district judge concluded that "general deterrence" was not a significant factor in this case, although he conceded that general deterrence was

important in white collar crime cases. The district court judge reasoned that the fact of Edwards's felony conviction and the conditions of probation constituted sufficient specific deterrence to prevent Edwards from engaging in similar conduct in the future. In addition, the district judge recognized that restitution serves as a deterrent, and that "[t]he term of probation imposed will enable [Edwards] to continue working in order to pay the significant amount of restitution he ow[e]s."

The district court next considered whether the sentence would "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The district judge stated that "look[ing] at the record with [Edwards] . . . I'm satisfied that somebody who committed these offenses . . . roughly nine years ago, and has lived the life that he has lived in the interim despite all the things that have gone on, I don't think there's a very good likelihood that he would engage in this kind of business in the future . . . ."

The district court evaluated the need for the sentence imposed to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). At the time of resentencing, Edwards was sixty-three years old and living with diabetes and related medical complications. Considering the diabetes and related medical complications, the district court reasoned that imprisoning Edwards would simply pass the cost of medical care on to taxpayers. While the district court agreed with the Government that the Bureau of Prisons was capable of providing for Edwards's medical care, it found that a sentence of probation would satisfy the requirement of providing needed care in the most effective manner. 18 U.S.C. § 3553(a)(2)(D).

The district court sentenced Edwards to five years' probation on both counts, to be served concurrently.[2] Unlike its pre-

---

[2]In addition to the standard conditions of probation, Edwards's probation contained special conditions of supervision. Among other things, the

vious two sentences, however, the district court ordered Edwards to pay $102,696.07 in restitution. Edwards appeals from the district court's order of restitution. The Government once again challenges the substantive reasonableness of the sentence. We have jurisdiction under 18 U.S.C. § 3742(b)(3) and 28 U.S.C. § 1291.

## II.  DISCUSSION

### A.  The District Court's Criminal Restitution Order

We first address Edwards's argument that the district court was collaterally estopped from imposing restitution in the amount of $102,696.07. Edwards contends that the district court could not impose a restitution order because compensation to Edwards's victims had already been determined through the bankruptcy settlement agreement. We review the legality of an order of restitution de novo. *United States v. Stoddard*, 150 F.3d 1140, 1147 (9th Cir. 1998) (citing *United States v. Rutgard*, 116 F.3d 1270, 1294 (9th Cir. 1997)). We also review de novo the application of collateral estoppel. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (citing *United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 868 (9th Cir. 2001)).

**[1]** We have explained that:

---

special conditions required Edwards to obtain his probation officer's approval before: incurring new lines of credit; filing any bankruptcy petitions; engaging in any type of self-employment or acting as a consultant, whether paid or not, for any business, corporation, or trust; engaging in any type of employment involving land development or construction; opening or obtaining signature authority over any checking, savings, or credit accounts; and any employment that "would give him access to money, bank or investment accounts, real or personal property, or inventory of any person or business entity." The special conditions additionally required Edwards to provide the probation officer with any requested financial information.

collateral estoppel applies only where it is established that (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (internal quotations omitted). We have also stated that "[t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997) (internal citation omitted). Edwards's argument that collateral estoppel applies to prevent the district court from ordering restitution fails on the first factor, which considers whether the issue necessarily decided at the previous proceeding is identical to the one sought to be relitigated.

Edwards argues that the bankruptcy settlement resolved the issue of compensation to his victims and thus precludes relitigation of that issue in the subsequent criminal proceedings.

**[2]** Although compensation to Edwards's victims was the general issue in the bankruptcy settlement, the issue is not identical to the issue in the criminal proceedings. The legal principles underlying the bankruptcy settlement and the later criminal restitution order differ greatly.

**[3]** "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A&C Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). Before approving a settlement agreement, the bankruptcy court is charged with considering the "fairness, reasonableness, and adequacy" of the agreement. *Id.* at 1381. The

bankruptcy court must consider a number of factors in making this determination:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (quoting *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984)). In this case, the Settlement Agreement expressly states that the parties entered into the agreement "for the purpose of terminating the disputes between them" and could not be used as an admission of liability by any party.

The principles guiding the bankruptcy court's assessment and approval of the voluntary Settlement Agreement contrasts sharply with the district court's duty to impose restitution under the Mandatory Victims Restitution Act ("MVRA"), codified at 18 U.S.C. §§ 3663A, 3664. The MVRA requires the district court, in sentencing a defendant convicted of certain crimes,[3] to order restitution to the defendant's victims. 18 U.S.C. § 3663A(a)(1). Further, the district court "shall order restitution to each victim in the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "In *no* case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance *or any other source* be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B) (emphasis added).[4]

---

[3]The MVRA requires restitution to victims of "an offense of property under this title . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii).

[4]The settlement did not compensate Edwards's victims in the full amount they lost at his hands, and Edwards does not argue that the restitu-

Victims "may at any time assign the victim's interest in restitution payments to the Crime Victims Fund . . . without in any way impairing the obligation of the defendant to make such payments." 18 U.S.C. § 3664(g)(2). Finally, the amount of restitution is offset by any other amounts the victim later recovers for the same loss in civil proceedings. 18 U.S.C. § 3664(j)(2).

Where the bankruptcy court is required to consider the competing interests of multiple creditors and the strength of their respective claims to the debtor's assets in order to achieve a fair and equitable agreement, the district court's discretion under the MVRA is much more constrained. *See United States v. Bright*, 353 F.3d 1114, 1121 (9th Cir. 2004) ("In passing the MVRA in 1996, Congress . . . significantly limited the court's discretion in setting the amount of . . . restitution."); *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004) ("The primary and overarching goal of the MVRA is to make victims of crime whole.").

Because the issue litigated in bankruptcy court was not the same issue that was litigated in Edwards's criminal proceedings, we hold that collateral estoppel does not apply and that the district court was not barred from ordering restitution to Edwards's victims.[5]

**[4]** Furthermore, the district court correctly relied upon *United States v. Cloud*, 872 F.2d 846 (9th Cir. 1989), to conclude that the existence of a prior bankruptcy settlement does not preclude a subsequent criminal restitution order. *Cloud* considered the federal restitution scheme under the Victim

---

tion order results in double recovery to them. The issue of double recovery is, therefore, not before us, and we express no opinion as to the permissibility of double recovery under the MVRA.

[5]Because Edwards's claim fails on the first factor, we need not address the other factors in detail.

and Witness Protection Act ("VWPA"). *Id.* at 848. In *Cloud*, the defendant was convicted of multiple counts of bank fraud and ordered to pay $7.5 million in restitution. *Id.* Prior to sentencing, the defendant entered into settlement agreements with the defrauded banks. *Id.* at 853. As part of the settlement agreements, the banks agreed to waive "all direct rights or causes of action" against the defendant. *Id.* The defendant in *Cloud* argued that the terms of the settlement agreement prevented the district court from ordering restitution in favor of the banks. *Id.*

**[5]** We affirmed the restitution order, reasoning that the banks did not have "a pre-existing 'right' to receive restitution under the VWPA that it could assert or waive." *Id.* at 854. We further looked to Supreme Court precedent holding that "criminal restitution is not ordered because victims have an independent legal entitlement to it but, rather, as a means of achieving penal objectives such as deterrence, rehabilitation, or retribution[.]" *Id.* at 854 (discussing *Kelly v. Robinson*, 479 U.S. 36, 52 (1986)).

**[6]** We have held that, other than making restitution mandatory and precluding the sentencing court from considering the defendant's economic circumstances when ordering restitution, the VWPA and the MVRA "are identical in all important respects, and courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent." *Gordon*, 393 F.3d at 1048. Contrary to Edwards's argument, mandatory restitution under the MVRA does not alter *Cloud*.[6] Criminal victims do not possess an "*independently* enforceable right to receive restitution" under the MVRA any more than they did under the VWPA. *Cloud*, 872 F.2d at 854

---

[6]Our holding is consistent with the Sixth Circuit's opinion in *United States v. Bearden*, 247 F.3d 1031, 1040-41 (6th Cir. 2001) (relying on *Cloud* and holding that a settlement agreement that releases a victim's claims against a criminal defendant does not bar the district court from ordering the defendant to pay restitution to the victim under the MVRA).

(emphasis added). Criminal restitution is mandatory under the MVRA and cannot be waived by a prior civil settlement. The district court correctly ordered restitution.

## B.    Reasonableness of the District Court's Sentence

We next consider the Government's challenge on appeal that the district court's sentence was substantively unreasonable. Our review of the reasonableness of a sentence proceeds in two steps. "[W]e first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007)).

Neither party challenges the procedural soundness of the district court's sentence. Furthermore, considering the factors laid out by our decision in *Carty* when reviewing a sentence for procedural error, we hold that the district court did not commit procedural error.[7] The district court explicitly considered each of the § 3553(a) factors and provided a detailed explanation for its sentence and its variance from the Guidelines range. *See Gall*, 128 S. Ct. at 597 (listing factors to consider in evaluating procedural reasonableness). Because the district court's sentence was procedurally sound, we proceed to "consider the substantive reasonableness of the sentence . . . ." *United States v. Cherer*, 513 F.3d 1150, 1159 (9th Cir. 2008) (quoting *Gall*, 128 S. Ct. at 597).

---

[7]We explained in *Carty*:

> It would be procedural error for a district court to calculate—or to calculate incorrectly—the Guidelines range; to treat the Guidelines as mandatory instead of advisory; to fail to consider the § 3553(a) factors; to choose a sentence based on clearly erroneous facts; or to fail adequately to explain the sentence selected, including any deviation from the Guidelines range.

520 F.3d at 993(citing *Gall*, 128 S.Ct. at 597).

### 1. Substantive Unreasonableness

In evaluating whether a sentence is substantively unreasonable, "the appellate court must review the sentence under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597; *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009). This standard applies to all sentencing decisions, "whether the sentence is inside the Guidelines range or outside of it." *Carty*, 520 F.3d at 993 (citing *Gall*, 128 S. Ct. at 596-97). If, as is the case here, the sentencing court imposes a sentence outside the Guidelines range, the appellate court may not apply a presumption of unreasonableness. *Gall*, 128 S. Ct. at 597. In reviewing any such variance, the appellate court:

> take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range . . . . It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Id.* We give due deference to the district court because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Id.* Furthermore, when reviewing a sentence that falls outside of the Guidelines range, "appellate courts must 'give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.' " *Autery*, 555 F.3d at 872 (quoting *Gall*, 128 S. Ct. at 597). "Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis." *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 597). We may reverse, however, "if, upon reviewing the record, we have a definite and firm conviction that the district court committed a clear

error of judgment in the conclusion it reached upon weighing the relevant factors." *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009).

Under this abuse of discretion standard of review, the Government urges us to hold that the district court erred in its application of the § 3553(a) factors in reaching its sentence. We consider each of the Government's challenges in turn.

### 2.　History and Characteristics of Edwards

**[7]** Section 3553(a)(1) of Title 18 requires the district court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" The Government contends that the district court gave short shrift to the similarity between Edwards's previous theft crime in Arizona and the crimes he committed in Montana. A review of the record, however, shows that the district court did not abuse its discretion in weighing Edwards's history and characteristics. The district court acknowledged several times that the Arizona felony Edwards committed was a very serious offense. The district court found that Edwards appeared in district court "a totally different person" than "the person who was somehow engaged in illegal conduct in Arizona" and was "convinced that Mr. Edwards has changed." The district court focused on Edwards's demeanor and mannerisms during allocution, observing that "I've been doing this long enough that I can tell, I think, when people are genuine . . . . I find . . . his statement, his allocution, to be very credible. I don't think there's a chance in hell that he's going to engage in this again in the future."

**[8]** In short, the district court was aware of and weighed Edwards's criminal history when fashioning the sentence. In its view, however, based on Edwards's history and characteristics, the district court did not feel a sentence of incarceration was appropriate. The district court did not abuse its discretion when it considered Edwards's history and circumstances,

relying on its " 'superior position' to find the relevant facts and to 'judge their import.' " *Whitehead*, 532 F.3d at 993.[8]

### 3.   Specific and General Deterrence

**[9]** Section 3553(a)(2)(B) of Title 18 requires district courts to consider whether the sentence imposed "afford[s] adequate deterrence to criminal conduct[.]" The Government next argues that the district court improperly weighed the deterrent effect of its sentence.

The district court concluded that the sentence of probation and the fact of a felony conviction would serve to deter Edwards from future wrongdoing. With respect to general deterrence, the district court agreed with the Government that general deterrence is more likely to occur in white collar crime cases, but found that general deterrence was not a significant factor "in a case like this." The district court expressed doubt as to whether the goals of general deterrence would be served through a prison sentence for Edwards, and rejected that idea. Finally, the district court reasoned that its order of restitution would satisfy the requirement that Edwards's sentence have general deterrent value, and a probationary sentence would best accomplish the goals of the restitution order because it would enable Edwards to earn the money he is required to pay.

---

[8]The Government's citation to our decision in *United States v. Cherer*, 513 F.3d 1150 (9th Cir. 2008) is not persuasive. The defendant in *Cherer* committed a crime while on probation for a prior, similar crime. *Id.* at 1160. Because the defendant did not take advantage of the first court's leniency, the district court determined that a lengthy prison sentence was necessary to protect the public. *Id.* Our holding in *Cherer* that the district court did not abuse its discretion by sentencing the defendant to a lengthy prison term does not *require* district courts to provide lengthy sentences to all defendants who commit crimes while on probation. To hold otherwise would rob criminal defendants of the "individualized assessment based on the facts presented" to which they are entitled. *Gall*, 128 S. Ct. at 597.

The Government argues that district court abused its discretion by finding that it could meet the goal of deterrence as expressed in § 3553(a)(2)(B) with probation and restitution but not incarceration. For support, the Government points to commentary in the legislative history of the Sentencing Reform Act. The portion of the legislative history submitted by the Government indeed expresses the opinion that many cases involving white collar crime were disposed of with probation, "without due consideration being given to the fact that the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance." S. Rep. No. 98-225, at 91-92 (1983) *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3274-75. Because of the increased importance of general deterrence in white collar crime cases, particularly where, as here, the defendant had previously committed a similar crime, the Government argues that not imposing a sentence of incarceration was reversible error.

**[10]** We cannot find as a matter of law, however, that the failure to impose a sentence that includes a period of incarceration is a violation of § 3553(a) or inconsistent with the Sentencing Reform Act. We find no support for such a rule. Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration.[9]

---

[9]Nor does the legislative history, which is the only source the Government provides in support of its argument, unequivocally support its position. After the statement in the legislative history quoted by the Government, the legislative history continues by stating:

> This is not meant to imply that the Committee considers a sentence of imprisonment to be the only form of sentence that may effectively carry deterrent or punitive weight. It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose.

S. Rep. No. 98-225, at 92 (footnote omitted). As noted, *see supra* note 2, the district carefully crafted specific probationary terms designed to

The district court explicitly considered, weighed and factored into its sentence the important goal of deterrence. We hold that its consideration of the deterrent effect of its sentence was not an abuse of discretion.

### 4.   Protection of the Public

18 U.S.C. § 3553(a)(2)(C) requires district courts to consider whether the sentence imposed "protect[s] the public from further crimes of the defendant[.]" The Government briefly argues that the district court's sentence does not adequately protect the public from Edwards. The Government contends that Edwards committed a major, comparable crime prior to committing the Montana crimes, and that therefore the public is in need of protection from Edwards's future crimes.

**[11]** The district court carefully weighed this factor before coming to the conclusion that it did not think that it was "likely to be a possibility, let alone a probability in the future" that Edwards would re-offend. The district court judge considered the fact that by the time of the 2008 re-sentencing, the offenses had been committed nine years previously and that Edwards had left the stress of his earlier job in the construction business that led him to become involved in the financial fraud scheme, and completed without incident three and one half years of probation. The court also considered Edwards's poor physical condition, Edwards's statements, the statements of Edwards's former step-son supporting Edwards's rehabilitation after committing the crimes, and the fact that Edwards would continue to be scrutinized by the probation department

address the particulars of Edwards's offense. Moreover, the district court considered probation to carry significant punitive weight. The judge explained that "[t]he Probation Office . . . has a very short chain for people like Mr. Edwards and his liberty is significantly restricted," and he warned that if Edwards did not comply with the terms of his probation, Edwards would be sent to the federal penitentiary. *Cf. Autery*, 555 F.3d at 868, 876.

when it concluded that its probationary sentence would adequately protect the public from Edwards. The Government's argument that the district court's careful consideration of whether the public needed to be protected from Edwards was an abuse of discretion is not persuasive.

5.    The Need to Avoid Unwarranted Sentencing
      Disparities

18 U.S.C. § 3553(a)(6) requires the district court to consider whether it is avoiding "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"[10] The Government challenges the sentence because in the Government's view it creates an unwarranted disparity in the treatment of Edwards and other federal fraud defendants. The district court considered and explained why he felt a disparity was warranted and distinguished Edwards's case from other federal fraud cases.

**[12]** As we explained in *United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008), "it is the [district court's] reasoned decision itself, not the specific reasons that are cited, that triggers our duty to defer." Here, the district court's decision shows that it rested on a reasoned basis and relied upon factors within its discretion including its evaluation of Edwards's changed and reformed character and the court's view of how deterrence could best be achieved. The district court did not abuse its discretion.

---

[10]The Government briefly argues that the district court's sentence takes no affirmative steps to rehabilitate Edwards. This assertion is contrary to the record, which clearly shows that the district court considered how Edwards's needs for educational or vocational training, medical care, or correctional treatment could be satisfied in the most effective manner. The district court's determination that Edwards's medical care could most effectively be taken care of by Edwards, and need not fall on taxpayers, was not an abuse of discretion.

## III.  CONCLUSION

Collateral estoppel does not apply to prevent the district court from ordering restitution, which it was required to do under the MVRA. The district court's sentence was not substantively unreasonable. The district court was clearly aware of the factors at play in this difficult case, and did not abuse its discretion when it sentenced Edwards. The district court's sentence is AFFIRMED.

---

BEA, Circuit Judge, concurring in part and dissenting in part:

I agree with Judge Kleinfeld's description of Edwards: he "is a big time thief." *United States v. Edwards*, 158 Fed. App'x 930, 931 (9th Cir. 2005) (Kleinfeld, J., dissenting).[1] Edwards was convicted of bank fraud in an Arizona state court after he stole more than $3 million. While Edwards was on probation imposed as part of his sentence for the Arizona fraud conviction, he lied to another bank to obtain a new bank loan—he did not tell the new bank he had been convicted of defrauding the earlier bank. He then filed for bankruptcy to avoid paying his new, fraudulently procured loan, but he knowingly did not fully disclose all of his assets and liabilities to the bankruptcy court, whose aid he had sought to avoid his loan obligations. When the government finally caught up with him and brought the fraud charges in this case, he pleaded guilty to bank fraud and to bankruptcy fraud. The intended and actual losses from Edwards's bank fraud and bankruptcy fraud totaled more than $500,000. The advisory Guidelines sentencing range was twenty-seven to thirty-three months'

---

[1]On a prior appeal of Edwards's sentence to this Court, Judge Kleinfeld dissented from the majority's decision to remand Edwards's sentence to the district court for possible resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *Edwards*, 158 Fed. App'x at 932 (Kleinfeld, J., dissenting). Judge Kleinfeld would have vacated the sentence as substantively unreasonable and remanded for resentencing. *Id.*

imprisonment, yet the sentence today approved by the major-
ity will result in Edwards serving *no time in prison*. The dis-
trict court sentenced Edwards to sixty months' probation—
with seven months served under house arrest—and ordered
him to pay just over $100,000 in restitution. The majority
concludes this sentence is substantively reasonable. But like
Judge Kleinfeld, "I cannot see how a sentence anything like
the one imposed could be reasonable under 18 U.S.C.
§ 3553(a)(2)."[2] *Id.* Therefore, I respectfully dissent from the
majority's holding that Edwards's below-Guidelines sentence
is substantively reasonable.[3]

The majority's holding that Edwards's sentence is substan-
tively reasonable evidences an ever-widening split between
our circuit's analysis of below-Guidelines sentences in the
context of white collar crime and that of our sister circuits.
Unlike many of our sister circuits,[4] our circuit has not held

---

[2]Section 3553(a)(2) lists factors a district court must consider when it
decides whether to impose a sentence outside the Guidelines range. Sec-
tion 3553(a)(2) requires the district court to consider

> the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect
> for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
> and
>
> (D) to provide the defendant with needed educational or voca-
> tional training, medical care, or other correctional treatment in
> the most effective manner . . . .

[3]I agree with the majority that the district court did not err when it
ordered restitution. I also agree that the district court committed no proce-
dural error—substantive unreasonability not being "procedural"—when it
sentenced Edwards.

[4]*See, e.g.*, *United States v. Livesay*, 587 F.3d 1274, 1278-79 (11th Cir.
2009) (holding that a sentence of five years' probation was unreasonably
lenient where the defendant played a key role in an accounting fraud
scheme that caused over $1 billion in losses to a company's shareholders

that a sentence imposed on a defendant who was convicted of a white collar crime is unreasonably lenient since the Supreme Court decided *Gall v. United States*, 552 U.S. 38 (2007).[5] That is not for lack of opportunity. *See, e.g., United States v. Whitehead*, 532 F.3d 991, 999-1000 (9th Cir. 2008) (Bybee, J., dissenting) (explaining that a sentence of probation, restitution, and community service was unreasonably lenient where the defendant stole over $1 million and the Guidelines range was forty-one to fifty-one months' imprisonment); *United States v. Ruff*, 535 F.3d 999, 1004-07 (9th Cir. 2008) (Gould, J., dissenting) (explaining that a sentence of one day's imprisonment and three years of supervised release was unreasonably lenient where the defendant stole over $600,000 and the Guidelines range was thirty to thirty-seven months' imprisonment). Edwards's sentence presents us with another such opportunity.

The majority's holding also evidences an intra-Circuit conflict that continues to develop. In *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009), we held that a *within*-Guidelines sentence was unduly *harsh*, hence substantively unreasonable. But, with one exception,[6] we have con-

---

and the Guidelines range was seventy-eight to ninety-seven months' imprisonment); *United States v. Omole*, 523 F.3d 691, 698-700 (7th Cir. 2008) (holding that a sentence of twelve months' imprisonment was unreasonably lenient where the defendant engaged in wire fraud and caused $90,000 in losses and the Guidelines range was sixty-three to seventy-eight months' imprisonment).

[5]Even outside the context of white collar crime, our circuit has only once since *Gall* held that a sentence is unreasonably lenient. *See United States v. Ressam*, No. 09-30000, 2010 WL 347962, at *33 (9th Cir. Feb. 2, 2010).

[6]The one exception is our recent decision in *Ressam*, where we held unreasonably lenient a twenty-two year sentence for a terrorist who "was convicted by a jury on nine counts of criminal activity in connection with his plot to carry out an attack against the United States by detonating explosives at the Los Angeles International Airport ("LAX") on the eve of the new Millennium, December 31, 1999." *Ressam*, 2010 WL 347962, at *1. The advisory Guidelines range in that case was sixty-five years to life in prison. *Id.*

sistently refused to hold that sentences significantly *below* the advisory Guidelines range are unduly *lenient*, hence substantively unreasonable. *See Whitehead*, 532 F.3d at 993; *Ruff*, 535 F.3d at 1003. It is difficult to reconcile the holding of *Amezcua-Vasquez* with the holdings of *Whitehead* and *Ruff*, unless we adopt a rule that what a panel considers to be a *harsh* sentence can be substantively unreasonable, but not so a *lenient* sentence; in other words, that "substantive unreasonability" in the Ninth Circuit is a one-way street that is posted to lead sentences only downwards. But as *Ressam* demonstrates, there is no such rule. 2010 WL 347962, at *33.

I agree with the majority that we must review the sentence imposed by the district court "under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. However, nothing in *Gall* "suggests that the Supreme Court has taken the courts of appeals out of the business of reviewing sentences." *Whitehead*, 532 F.3d at 995 (Bybee, J., dissenting); *see also Rita v. United States*, 551 U.S. 338, 354 (2007) ("In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur."). We must review sentences for significant procedural error *and* for substantive reasonableness. *Gall*, 552 U.S. at 51. And when we review the reasonableness of a below-Guidelines sentence, we may consider the extent to which the sentence imposed deviates from the Guidelines range. *Id.* at 47. As the Supreme Court explained, "it [is] uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* at 50. The district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* Thus, even after *Gall*, it is clear that "[t]he abuse of discretion standard of review is not a rubber stamp of all sentencing decisions made by a district court." *Ruff*, 535 F.3d at 1005 (Gould, J., dissenting).

We have recently clarified the abuse of discretion standard in this circuit. *See United States v. Hinkson*, 585 F.3d 1247,

1262 (9th Cir. 2009) (en banc). We now apply a two-part test to determine whether the district court abused its discretion. *Id.* Under the first step, we "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* "If the trial court identified the correct legal rule, we move to the second step . . . to determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks and citation omitted).

Here, the district court identified and applied the correct legal rule. The district court correctly calculated the advisory Guidelines range—twenty-seven to thirty-three months' imprisonment—and then considered the 18 U.S.C. § 3553(a) sentencing factors to determine whether to impose a sentence outside the Guidelines range. *See Gall*, 552 U.S. at 49-50. But the district court's view that the purpose of general deterrence is limited to the effect that deterrence could have only within the defendant's community—here, the community where Edwards lived in Montana at the time he committed bank fraud and bankruptcy fraud and the community where he now lives in Oklahoma—is simply an incorrect application of 18 U.S.C. § 3553(a)(2)(B). In this day and age of internet and broadband communications, the district court should have considered how others, on a nationwide level, would have been deterred, or *not*, by a conviction followed by only a probationary sentence.

Further, the district court's imposition of a sentence of sixty months' probation and $100,000 in restitution that included *no incarceration* was (1) illogical as to the effect a sentence without incarceration would have on Edwards's community, and (2) without support in inferences that may be drawn from the facts in the record. Thus, the district court abused its discretion.

The sentencing court must consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal

conduct." 18 U.S.C. § 3553(a)(2)(B). Deterrence encompasses both general deterrence and specific deterrence. However, specific deterrence is also considered under § 3553(a)(2)(C), which requires the district court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). Thus, when a district court considers § 3553(a)(2)(B), it should focus on whether a sentence will provide general deterrence. *See United Staes v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (explaining that § 3553(a)(2)(B) speaks to general deterrence while § 3553(a)(2)(C) speaks to specific deterrence).

General deterrence is effective in the context of white collar crime such as Edwards's bank fraud and bankruptcy fraud. "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Martin*, 455 F.3d at 1240 (holding that a sentence of seven days' imprisonment was substantively unreasonable where the defendant participated in a securities fraud conspiracy that caused more than $1 billion in losses). White collar crime, especially bank fraud, usually requires a well-schooled, intelligent criminal, capable of gauging the upside of how others will be gulled by his well-honed fables. This ability to foresee extends also to the possible downside of his fraud: apprehension, conviction, and *punishment*. Further, bank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision.

It is precisely at this point—when the thief of above-average education and wit is deciding whether to do the deed—that reflection on probable prison time—general deterrence—can have an effect. Like the taxpayer who decides not to defraud the fisc for fear of wearing an orange jumpsuit for a long time because he knows that the government goes after

everyone—even Al Capone—for tax fraud, the contemplating bank fraud thief should be forced to consider a message other than: "Oh, if you get caught and you put on a repentant's suit, you'll probably get probation and a restitution order of 20% of what you stole. And about that restitution order, don't worry too much because, in America, there are no debtor's prisons. So if you don't pay, you won't do time."

Here, the district court acknowledged that general deterrence is effective in the context of white collar crime but still imposed a non-prison sentence. The district court stated:

> General deterrence, I don't think it has a significant factor in a case like this, but I will agree with [the government] that in white collar crime cases general deterrence is more likely to occur than in something like the kinds of drug cases or gun cases or pornography cases that we see frequently in this court.

This finding—that general deterrence was not a significant factor in this case—is clearly erroneous and cannot justify Edwards's sentence.

The district court assumed the only general deterrence effect would be in the communities where Edwards had lived and that the people in those communities had already been deterred based on their awareness of Edwards's conviction.[7] But that is an unnecessarily restrictive view of general deterrence. Why should general deterrence be considered only in terms of the defendant's community? Section 3553(a)(2)(B) speaks to deterring "criminal conduct"; it does not suggest such deterrence should be limited to the defendant's own community. For sure, Edwards's present sentence will not

---

[7]I agree that Edwards's sentence had some deterrence effect in his communities: one hopes those in his communities have been deterred from dealing with Edwards. But the thieves among them have not been deterred from following in his footsteps.

deter criminal conduct. It will incentivize it. The sentence sends the message that a reasonable sentence for white collar criminals is probation and restitution. We risk allowing this sentence to become "a baseline against which we measure other sentences." *Whitehead*, 532 F.3d at 999 (Bybee, J., dissenting).

The majority concludes that "[t]he district court explicitly considered, weighed and factored into its sentence the important goal of deterrence." Maj. Op. at 2467. The majority points out that "[t]he district court concluded that the sentence of probation and the fact of a felony conviction would serve to deter Edwards from future wrongdoing." *Id.* at 2465. Even assuming the important goal of *specific* deterrence is reflected in Edwards's sentence, I fail to see how the equally important goal of *general* deterrence is reflected in Edwards's sentence other than to claim people in Edwards's communities would be deterred by knowledge of his conviction. How does knowledge of Edwards's conviction provide general deterrence? Edwards's sentence conveys the message that white collar criminals can steal and not do time. The district court did not explain why some term of imprisonment was not necessary. It is not enough to state that general deterrence does not matter in this case.

I do not ignore the fact that Edwards was ordered to pay more than $100,000 in restitution. I agree with both the district court and the majority that a restitution order does create general deterrence. However, without some term of imprisonment, restitution is simply inadequate to deter the type of conduct in which Edwards engaged: he caused and intended to cause losses totaling more than $500,000 while still on probation for a prior conviction of theft of six times as much! Sure, Edwards was forced to repay some of his ill-gotten gains, but he will not be subjected to the loss of liberty that accompanies a term of imprisonment. I agree with the Eleventh Circuit: some crimes require at least some time in prison—no proba-

tionary sentence will be sufficient. *See Livesay*, 587 F.3d at 1279. Edwards's crimes fall into that category.

Sooner or later our circuit must come to the final question: how do we determine whether a sentence without incarceration is unreasonable? And if a sentence without incarceration is unreasonable, what term of incarceration is unreasonable? At times like this, one is tempted to reach for Justice Potter Stewart's definition of pornography and apply it to determine whether a sentence is unreasonable: "I know it when I see it," *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). Such a personalized and subjective norm does not sound like what an appellate court should be laying down as a rule to the district courts.

But can we do any better by attempting to spell out what constitutes "unreasonable" in the abstract? I think the Court, in *Gall*, wants us to try. In fact, *Gall* itself provided some guidance as to factors an appellate court should consider when it reviews the substantive reasonableness of a sentence. *See* 552 U.S. at 47-48. Additional factors to consider emerge from the decisions of our sister circuits and the reasoned opinions—both majority and dissenting—of our Court. Although no list of factors will be exhaustive and not all factors will be relevant in every case, we must provide guidance to the district courts so that we can minimize sentencing disparities even in the absence of mandatory guidelines.[8] *See Whitehead*, 532 F.3d at 999-1000 (Bybee, J., dissenting) ("As a circuit, we have an obligation to ensure roughly equal sentences both among our judicial districts and within each judicial district.").

---

[8]Trial courts are called on daily to determine what is "reasonable" in a variety of contexts. Discovery orders, extensions of time, bench trials in negligence cases, and review of damages awards—or determination of criminal sentences—are just some of the many such contexts. Where precedent has produced a practice, the task is easier. A practice develops settled expectations. We must begin to do the same in the context of reviewing sentences for substantive reasonableness.

First, we should consider the quantitative and qualitative deviation of the sentence imposed from the sentence recommended by the now-advisory Guidelines. *See Gall*, 552 U.S. at 47-48. The quantitative deviation refers to the extent to which the sentence imposed is longer or shorter than the advisory Guidelines range. *Id.* at 41, 47 ("[T]he extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant."). The qualitative deviation refers to whether the type of sentence imposed (e.g., probation) differs from the type of sentence recommended by the Guidelines (e.g., incarceration). *Id.* at 48 ("We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms."). Here, the sentence imposed by the district court was a significant deviation—both quantitatively and qualitatively—from the recommended Guidelines sentence. The Guidelines range was twenty-seven to thirty-three months' *incarceration*, but the district court imposed a *probationary* sentence of five years with *no incarceration*.

Second, we should consider whether the district court's deviation from the advisory Guidelines range was based on circumstances already taken into account by the Guidelines. *See Whitehead*, 532 F.3d at 998-99 (Bybee, J., dissenting) ("The district court abused its discretion by completely reducing [the defendant's] sentence based on a low likelihood of recidivism where the Guidelines calculation itself had *already* been reduced to reflect this factor."). Here, the district court explained that a probationary sentence "was sufficient to protect the public from further crimes by the defendant." However, Edwards's likelihood of recidivism had already been considered in the calculation of his criminal history category. Edwards was not assigned the lowest criminal history category because he had committed bank fraud while on probation for a similar crime in Arizona. Based on Edwards's track record, the Guidelines recommended a sentence of incarceration to protect the public from Edwards.

The district court made a directly contrary finding on the ground that there was not "a very good likelihood that [Edwards] would engage in this kind of business in the future." The district court explained that the likelihood of recidivism was low because Edwards had committed bank fraud and bankruptcy fraud nine years earlier with no subsequent convictions; he had significant medical problems, including diabetes and neuropathy; and he left the construction industry, which "is what got him into the trouble in the first place." Although we must give deference to the district court's finding that the likelihood of recidivism was low, that finding cannot support the extent of the district court's deviation from the sentence recommended by the Guidelines, particularly given that the Guidelines already took the likelihood of recidivism into account by not assigning Edwards a higher criminal history category.

Third, we should consider whether the mitigating factors relied on by the district court to reduce the sentence were unexceptional or "common to similarly situated offenders." *Omole*, 523 F.3d at 698 (explaining that the defendant's young age—twenty years old—was not a unique characteristic that would justify a sentence significantly below the Guidelines range); *see Whitehead*, 532 F.3d at 997-98 (Bybee, J., dissenting) (explaining that the fact the defendant had shared custody of his daughter was not an exceptional circumstance because "the mere imposition of hardship on family relationships . . . necessarily accompanies the order of any prison sentence"). Here, the district court explained that a below-Guidelines sentence was warranted because the Guidelines range was based on Edwards's intended loss, not the actual loss he caused. But it is unexceptional that the actual losses were less than the intended losses. I expect the amount the run-of-the-mill thief intends to steal is usually greater than the amount he actually steals. The fact that the losses attributed to Edwards were intended rather than actual simply reflects the fact that Edwards got caught. He should not benefit from that fact.

Fourth, we should consider whether the district court "base[d] the sentence on impermissible factors." *Hunt*, 521 F.3d at 649 (holding that the district court abused its discretion when it imposed a below-Guidelines sentence, in part, because it disagreed with the jury's finding that the defendant had the intent to defraud). Here, although the district court's sentence was based on the § 3553(a) factors, it was based on an erroneous interpretation of § 3553(a)(2)(B). The district court concluded general deterrence was not an important factor, based on the conclusion that general deterrence is limited by the concept of the crook's immediate community—a term nowhere to be found in the statute.

Fifth, we should consider whether the district court gave "too much weight" to a particular § 3553(a) factor. *See Ressam*, 2010 WL 347962, at *33 ("[I]t appears that the district court abused its discretion in weighing the relevant factors by giving too much weight to [the defendant's] cooperation and not enough weight to the other relevant § 3553(a) factors, including the need to protect the public."); *United States v. Givens*, 443 F.3d 642, 646 (8th Cir. 2006) (vacating and remanding a sentence as substantively unreasonable where the district court gave "too much weight" to the defendant's "history and characteristics and showed a great deal of sympathy toward him" and gave "not enough [weight] to the other portions of section 3553(a)"). Here, the district court, like the district court in *Givens*, gave too much weight to Edwards's history and characteristics and gave too little weight to general deterrence.

Edwards's sentence was based on the district court's clearly erroneous finding that general deterrence is not a significant factor in this case and the conclusion that the sentencing factor of general deterrence is somehow restricted only to the effect prison terms would have on Edwards's community. If we ignore the district court's finding there *was* general deterrence by a probationary sentence because of the vagueness of such finding, the district court's application of § 3553(a)—

and the imposition of a sentence that included no incarceration—was illogical and without support in inferences that may be drawn from the facts in the record. Although we must give deference to the district court's finding that Edwards was not likely to commit a similar crime in the future, that finding does not justify the significant deviation from the Guidelines sentencing range. Because the district court abused its discretion when it imposed this substantively unreasonable sentence, I respectfully dissent.